# CV-09 5377

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

U.S. ~~~~~~~ COURT E.D.N.Y.

★  DEC 0 9 2009  ★

DIVERSIFIED INVESTMENT ADVISORS, INC.,

LONG ISLAND OFFICE

Plaintiff,

**INTERPLEADER
COMPLAINT**

v.

Civil Action No.

DODY BARUCH, AND MARK CHASSEN AS PERSONAL
REPRESENTATIVE FOR THE ESTATE OF HOWARD
CHASSEN,

**WEINSTEIN, CH. J.**

Defendants.

**REYES, JR, M.**

Plaintiff, Diversified Investment Advisors, Inc. alleges upon information and

belief, except as to paragraphs 1, 5-7, 23-27, as follows:

## INTRODUCTION

1.       Diversified Investment Advisors, Inc. ("Diversified") brings this

interpleader action to resolve competing claims by the defendants to funds in a participant

account (the "Account") held by the late Howard Chassen ("H. Chassen") under the Bethpage

UFSD Town of Oyster Bay Fixed Annuity Retirement 403(b) Plan (the "Plan"), which Plan is

not subject to the Employee Retirement Income Security Act ("ERISA").  Diversified acts as the

Plan Administrator for the Plan.

2.       On March 31, 2008, H. Chassen passed away in Aventura, Florida.

3.       Defendant Dody Baruch ("Claimant Baruch") is H. Chassen's former wife

and claims, through her counsel, that she is the only true and proper beneficiary under the

Account.  Claimant Baruch's counsel has submitted a claim to Diversified requesting that the

entire amount of the funds in the Account be paid to Dody Baruch .

4.    Defendant Mark Chassen ("Claimant Chassen"), as personal representative of H. Chassen's estate (the "Estate"), has also submitted a claim to Diversified alleging that the Estate is the only true and proper beneficiary under the Account, and requesting that the entire amount of the funds in the Account be released to the Estate.

5.    Diversified has commenced this statutory interpleader action to resolve the competing claims by having the Court declare the rights of the defendants with respect to the funds in the Account and thereby avoid double liability to the defendants.

6.    Diversified is ready and willing to pay the funds in the Account into the registry of the Court, or as otherwise ordered by the Court.

## THE PARTIES

7.    Diversified is a corporation organized and existing under the laws of the State of Delaware and registered to do business in New York with its principal place of business at 4 Manhattanville Road, Purchase, New York.

8.    Claimant Baruch is a citizen of New York and resides in or around Montauk, New York.

9.    Claimant Baruch was married to H. Chassen until their divorce on or about March 15, 2005.

10.    At the time of his death, H. Chassen was a citizen of Florida.

11.    Claimant Chassen is the son of H. Chassen and was appointed by the Probate Division of the Circuit Court for Broward County, Florida, to serve as personal representative of the Estate.

12.    In his capacity as personal representative of the Estate, Claimant Chassen is to be deemed a citizen of Florida under 28 U.S.C. § 1332(c)(2).

2

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over the subject matter of this statutory

interpleader action pursuant to 28 U.S.C. § 1335.

14.     Venue is proper in the United States District Court for the Eastern District

of New York pursuant to 28 U.S.C. § 1397 because Claimant Baruch resides in this District.

## NATURE OF ADVERSE CLAIMS

15.     On March 1, 2002, H. Chassen completed Diversified's Minimum

Distribution Request form relating to his Account, attached as **Exhibit A.**[1]

16.     In the Minimum Distribution Request form, H. Chassen designated

Claimant Baruch as his wife and the sole primary beneficiary with a 100% share of death

benefits under the Account.

17.     H. Chassen passed away on or about March 31, 2008 in Aventura, Florida.

A copy of the Certificate of Death is attached as **Exhibit B**.

18.     Diversified never received a Change of Beneficiary form from H. Chassen

subsequent to receiving his beneficiary designation of Claimant Baruch that he had completed

on March 1, 2002, as part of the aforementioned Minimum Distribution Request Form.

19.     On or about May 16, 2008, Claimant Chassen sent Diversified an

unsigned and undated copy of a Modification to Separation Agreement between H. Chassen and

Claimant Baruch, providing, *inter alia*: "Simultaneously with the signing of this Agreement, the

Wife forever waives any and all claims she may have now or in the future in and to any pension

retirement and non-wage compensation which have heretofore accrued or which may hereafter

accrue to the Husband." A copy of the unsigned, undated Modification to Separation Agreement

---

[1] Pursuant to Rule 5.2 of the Federal Rules of Civil Procedure, the social security numbers and other confidential information listed in the documents attached to this Complaint have been redacted in order to protect the privacy interests of those affected.

1639548.2 12/7/2009

is attached as **Exhibit C**.  Claimant Chassen has not provided Diversified with a signed copy of the Modification to Separation Agreement.

20.     On or about September 16, 2008, counsel for Claimant Chassen sent Diversified a written notice, advising that Claimant Chassen was applying for appointment as Administrator of the Estate and directing Diversified to freeze the funds in the Account.  Counsel also enclosed a copy of a Judgment of Divorce between H. Chassen and Claimant Baruch, dated March 15, 2005, that expressly incorporated the terms of a Separation Agreement, dated May 25, 1999, and a Modification of Separation Agreement, dated September 13, 2004, neither of which were enclosed or attached to the Judgment of Divorce; instead, counsel enclosed an earlier Separation Agreement, dated December 28, 1998, which was not referenced or incorporated in the Judgment of Divorce.  A copy of the September 16, 2008 letter from Claimant Chassen's counsel, together with its enclosures, is attached as **Exhibit D**.

21.     On or about March 10, 2009, Diversified received a letter from counsel for Claimant Chassen advising that Claimant Chassen had been appointed by the Probate Division of the Circuit Court for Broward County, Florida, to serve as personal representative of the Estate and requesting that Diversified "advise as to the necessary requirements in order to release the funds to the Estate."  A copy of the letter and its enclosure, the Order Appointing Personal Representative by the Florida court, is attached as **Exhibit E**.

22.     On or about November 17, 2009, Diversified received a written claim to the funds in the Account from counsel for Claimant Baruch, a copy of which is attached as **Exhibit F**.

23.     By reason of these actual competing claims, Diversified is exposed to multiple liability.

1639548.2 12/7/2009

24.     Diversified, as a mere stakeholder, has no interest (except to recover its attorneys' fees and costs of this action), in the benefits payable under the Account and respectfully requests that this Court determine to whom said benefits should be paid.

25.     As of the close of business on December 1, 2009, the balance of funds in the Account was $42,851.64.

26.     Diversified is ready and willing to deposit the full amount of the Account balance into the registry of the Court.

27.     Diversified has not brought this Interpleader Complaint at the request of either or both of the claimants; there is no fraud or collusion between Diversified and either or both of the claimants; and Diversified brings this Complaint of its own free will and to avoid being vexed and harassed by conflicting and multiple claims.

### PRAYER FOR RELIEF

WHEREFORE, Diversified prays for judgment as follows:

A.     The Defendants be required to answer this Interpleader Complaint and litigate between themselves their rights to the benefits due under the Account.

B.     The Defendants be restrained and enjoined from commencing any actions on or relating to the subject Account against Diversified.

C.     That Diversified be authorized to pay into this Court, or as otherwise directed by the Court, the funds in the Account and that such funds be deposited into an interest bearing account.

D.     That Diversified be awarded its attorneys' fees, costs and disbursements relating to this action, to be paid out of the proceeds of the Account deposited with the Court, or as otherwise directed by the Court.

5

E.      That upon Diversified's payment of the funds in the Account to the Clerk of the
United States District Court, Diversified and its past, present and future parents, subsidiaries,
affiliates, successors, assignees, agents, producers, servants, employees, officers, directors,
principals, representatives, attorneys, and insurers be wholly and completely discharged and
absolved from any further liability of whatsoever nature to each of the defendants and any other
claimant for the benefits arising under the Account as the result of H. Chassen's death.

F.      That Diversified have such other and further relief as the Court may deem just and
proper.

Dated:  December 7, 2009                          BOND, SCHOENECK & KING, PLLC


                                                  By: ___s/ Clifford G. Tsan_____
                                                          Clifford G. Tsan
                                                          Edward R. Conan
                                                  Office and P.O. Address
                                                  One Lincoln Center
                                                  Syracuse, NY 13202
                                                  Telephone:  (315) 218-8000
                                                  Fax:  (315) 218-8100

                                                  *Attorneys for Plaintiff,*
                                                  *Diversified Investment Advisors, Inc.*

1639548.2 12/7/2009

 **DIVERSIFIED INVESTMENT ADVISORS**
4 Manhattanville Road, Purchase, NY 10577
800-826-0044
www.divinvest.com



## Minimum Distribution Request

### SECTION A. Employer Information

Company/Employer Name

Contract/Account No.  Redacted  Affiliate No.  Redacted  Division No.

### SECTION B. Participant Information

Social Security No.  Date of Birth  Redacted - 1936  E-Mail Address

Last Name  CHASSEN  First Name/Middle Initial  HOWARD

Street Address/Apt. No.  Redacted  Phone No.  Redacted  Ext. (if any)

City  MONTAUK  State  NY  Zip Code  11954 -  Marital Status  ☑ Married  ☐ Single/Divorced

### SECTION C. Minimum Distribution Information

☐ Life expectancy calculation based on:

  ☐ my account balance as of 12/31 of the year prior to the distribution calendar year and the IRS uniform table

  ☑ my post 12/31/1986 contributions and earnings and the applicable IRS table

☐ Joint life expectancy calculation based on *(applies if your spouse is your sole primary beneficiary and is more than 10 years younger)*:

  ☐ my account balance as of 12/31 of the year prior to the distribution calendar year and the applicable IRS table

  ☑ my post 12/31/1986 contributions and earnings and the applicable IRS table

Spouse Date of Birth  redacted - 1943

Payment frequency:  ☐ Monthly  ☐ Quarterly  ☑ Semi-Annual  ☐ Annual  Payment commencement month: APR. 2002

### SECTION D. Beneficiary Information

This designation will apply to the account number above and will update any prior beneficiary designation. You must designate a specific percentage for each beneficiary. Shares must be whole percentages and total 100%. If you do not indicate shares, benefits will be split equally among surviving beneficiaries. If the named beneficiary is a trust, please specify the name and date of the trust, and the name of the trustee.

**Primary Beneficiary(ies) - Will receive benefits in the event of your death.**

| Beneficiary Name(s) and Address(es) | Relationship | Share of Benefits |
|---|---|---|
| DODY BARUCH  Redacted  Montauk NY 11954 | wife | 100% |

**Contingent Beneficiary(ies) - Will receive benefits if no primary beneficiary is living at the time of your death.**

| Beneficiary Name(s) and Address(es) | Relationship | Share of Benefits |
|---|---|---|
| | | |

### SECTION E. Tax Withholding

**Federal Income Tax Withholding** – This minimum distribution is subject to 10% federal income tax withholding unless you elect otherwise.

☐ Withhold federal income tax in a percentage other than 10%: _____%

☑ Do not withhold federal income tax

**State Income Tax Withholding** – Withholding is mandatory in some states. Other states allow an independent election and in these states, state tax will be withheld unless you elect otherwise.

☑ Do not withhold state income tax (if independent election is permitted)

Form No. 3053-NFP-NE (2/02) (Page 1 of 2)  NFP Non-ERISA

**SECTION G. Signature**

I certify that the information provided on this form is correct.

X ~~Howard Chasen~~ 3/1/02

Participant Signature          Date

**Church or Government Plans ONLY:**

I certify that this transaction is permissible under the provisions of the plan and complies with current regulations.

X _____    _____

Plan Representative Signature          Date

Form No. 3033-NFP-NE (2/02) (Page 2 of 2)      NFP Non-ERISA

STATE OF FLORIDA

## OFFICE of VITAL STATISTICS

### CERTIFIED COPY

**FLORIDA CERTIFICATE OF DEATH**

| | | |
|---|---|---|
| DECEDENT'S NAME | HOWARD CHASSEN | SEX: MALE |
| DATE OF BIRTH: Redacted 1930 | AGE 77 | DATE OF DEATH: MARCH 31, 2008 |
| BIRTHPLACE: BROOKLYN, NEW YORK | COUNTY OF DEATH: MIAMI-DADE | |

PLACE OF DEATH — HOSPITAL — NOT HOSPITAL X

FACILITY NAME: VITAS HEALTHCARE/AVENTURA HOSP. & MED. CENTER

CITY, TOWN, OR LOCATION OF DEATH: AVENTURA

MARITAL STATUS: Married — Never Married — Widowed X

SURVIVING SPOUSE'S NAME: NONE

RESIDENCE STATE: FLORIDA — COUNTY: BROWARD — CITY, TOWN OR LOCATION: HALLANDALE BEACH

STREET ADDRESS: Redacted — Redacted — ZIP CODE 33009

USUAL OCCUPATION: TEACHER — KIND OF BUSINESS/INDUSTRY: PUBLIC SCHOOL

RACE: White X

DECEDENT'S EDUCATION: College degree

FATHER'S NAME: NEAL CHASSEN

MOTHER'S NAME: MARY RABINOWITZ

INFORMANT'S NAME: MARK CHASSEN — RELATIONSHIP TO DECEDENT: SON — INFORMANT'S MAILING STATE: NEW JERSEY

CITY OR TOWN: MATAWAN — ZIP: 07742

Redacted

PLACE OF DISPOSITION: MT. JUDAH — LOCATION - CITY - STATE: NEW YORK — RIDGEWOOD

METHOD OF DISPOSITION: Burial X

Redacted

NAME OF FUNERAL FACILITY: LEVITT WEINSTEIN MEMORIAL CHAPEL — FLORIDA

CITY OR TOWN: NORTH MIAMI BEACH — STREET ADDRESS: 18840 WEST DIXIE HIGHWAY — ZIP CODE: 33180

CERTIFIER: X Certifying Physician

DATE SIGNED: 4/1/09 — 0045

LICENSE NUMBER: ME00050897 — ERIC SPIVACK M.D.

STATE: FLORIDA — CITY OR TOWN: AVENTURA — STREET ADDRESS: 21110 BISCAYNE BOULEVARD — ZIP CODE: 33180

LOCAL REGISTRAR — Signature

DATE: APR 10 2008

PROBABLE MANNER OF DEATH:

IMMEDIATE CAUSE:   Cerebrovascular Accident

Endocarditis

WARNING: THIS DOCUMENT IS PRINTED OR PHOTOCOPIED ON SECURITY PAPER WITH A WATERMARK OF THE GREAT SEAL OF THE STATE OF FLORIDA. DO NOT ACCEPT WITHOUT VERIFYING THE PRESENCE OF THE WATERMARK. THE DOCUMENT ALSO CONTAINS A MULTI-COLORED BACKGROUND AND GOLD EMBOSSED SEAL. THE BACK CONTAINS SPECIAL LINES WITH TEXT AND SEALS IN THERMOCHROMIC INK.

DH FORM 1947 (08/04)

APR 1 4 2008

HEALTH

34391145

* 3 4 3 9 1 1 4 5 *

# MODIFICATION TO SEPARATION AGREEMENT

### MADE BETWEEN

### DODY BARUCH, AS WIFE

### AND

### HOWARD CHASSEN, AS HUSBAND

**JEANMARIE P. COSTELLO, ESQ.**
Attorney for Husband
455 Griffing Avenue
Riverhead, New York   11901
631-727-1090

16/05 '08 VRI 07:43 FAX 31 20 57 68761        OPERATIONS EMEA                    ⏧003

# TABLE OF CONTENTS

| | | |
|---|---|---|
| ARTICLE I | SEPARATE AND APART | 4 |
| ARTICLE II | NO MOLESTATION | 5 |
| ARTICLE III | SEPARATE OWNERSHIP | 6 |
| ARTICLE IV | APPLICABLE LAWS | 6 |
| ARTICLE V | MUTUAL RELEASE AND DISCHARGE OF CLAIMS IN ESTATES | 7 |
| ARTICLE VI | MUTUAL RELEASE AND DISCHARGE OF GENERAL CLAIMS | 9 |
| ARTICLE VII | RESPONSIBILITY FOR DEBTS | 10 |
| | CREDIT CARDS | 11 |
| ARTICLE VIII | SPOUSAL SUPPORT | 12 |
| ARTICLE IX | MEDICAL COVERAGE | 13 |
| ARTICLE X | PENSION PLANS | 14 |
| ARTICLE XI | EQUITABLE DISTRIBUTION | 15 |
| ARTICLE XII | PERSONAL PROPERTY, BANK ACCOUNTS, AND HOUSEHOLD EFFECTS | 17 |
| ARTICLE XIII | GREENHEDGES | 18 |
| ARTICLE XIV | PROPERTY SETTLEMENT AGREEMENT | 19 |
| ARTICLE XV | FULL DISCLOSURE | 23 |
| ARTICLE XVI | INCOME TAX RETURNS | 24 |
| ARTICLE XVII | LEGAL REPRESENTATION AND COUNSEL FEES | 25 |
| ARTICLE XVIII | VOLUNTARINESS | 25 |
| ARTICLE XIX | RECONCILIATION AND MATRIMONIAL DECREES | 26 |
| ARTICLE XX | GENERAL PROVISIONS | 27 |
| ARTICLE XXI | BANKRUPTCY DOES NOT AFFECT OBLIGATIONS | 29 |
| | SIGNATURE PAGE | 30 |
| | ACKNOWLEDGMENTS | 31 |

**MODIFICATION TO SEPARATION AGREEMENT** made and entered into on the _____ day of _____, 2004, by and between **DODY BARUCH,** residing at ~~Redacted~~ , Montauk, New York 11954, (hereinafter referred to as the "Wife") and **HOWARD CHASSEN,** residing at ——— Redacted ———— , Hallandale, Florida 33009, (hereinafter referred to as the "Husband.")

## W I T N E S S E T H:

**WHEREAS,** the parties were married on the 13th day of February, 1988, in a non-religious ceremony in New York City, State of New York, and ever since then have been and still are Husband and Wife; and

**WHEREAS,** there are no children born of this marriage, and

**WHEREAS,** the parties entered into a written Agreement of Separation dated May 25, 1999 and filed with the Suffolk County Clerk on March 27, 2000, and

**WHEREAS,** the parties desire to modify all prior Separation Agreements, and

**WHEREAS,** the parties hereto have considered their rights to maintenance, equitable distribution and distributive awards under the laws of the State of New York as set forth pursuant to Domestic Relations Law Section 236(b) and by this agreement intend to live separate and apart from each other and wish to resolve all of their financial rights arising out of their

16/05 '08 VRI 07:44 FAX 31 20 57 68761        OPERATIONS EMEA                           005

marital relationship, thereby making their own agreement concerning support and maintenance and thereby making their own distribution of their property and hereby waiving any and all claims either may have now or in the future to any equitable distribution thereof by themselves or any Court of competent jurisdiction; and

WHEREAS, certain unhappy and irreconcilable differences have arisen between the parties as a result of which they have separated and are now living separate and apart from each other; and

WHEREAS, the parties hereto represent that they have been fully, separately and independently apprised and advised of their respective legal rights, remedies, privileges and obligations arising out of the marriage, or otherwise, by independent counsel of their own choice and selection, and each having, in addition thereto, made independent inquiry and investigation with respect to all of the same, and each having been fully informed of the other's assets, property holdings, income and prospects; and

WHEREAS, each party has fully disclosed to the other party hereto all of his or her assets, holdings, income, pensions and future interests; and

WHEREAS, the Wife agrees to accept the full performance of the provisions hereof in final settlement and satisfaction of any and all claims and rights that she may now or hereafter have against the Husband for her support, maintenance and equitable

2

distribution of property rights, and she releases and discharges the Husband absolutely and forever for the rest of her life from any and all demands for maintenance, alimony and equitable distribution of property rights or any provision for support, except as provided herein; and

**WHEREAS,** the Husband agrees to accept the full performance of the provisions hereof in final settlement and satisfaction of any and all claims and rights that he may now or hereafter have against the Wife for his support, maintenance and equitable distribution of property rights, and he releases and discharges the Wife absolutely and forever for the rest of his life from any and all demands for maintenance, alimony and equitable distribution of property rights or any provision for support, except as provided herein; and

**WHEREAS,** the Husband intends by this Agreement to discharge, settle and satisfy any and all claims and rights to money and property of any nature he may have or heretofore had against the Wife, and he releases and discharges the Wife from all such claims and rights forever, except as provided herein; and

**WHEREAS,** the Wife intends by this Agreement to discharge, settle and satisfy any and all claims and rights to money and property of any nature she may have or heretofore had against the Husband, and she releases and discharges the Husband from all such claims and rights forever, excepts as provided herein; and

3

WHEREAS, the Agreement shall effect a final, complete and irrevocable settlement with respect to all property and financial claims that either of the parties may now or at any time hereafter have against the other, except as herein provided; and

WHEREAS, the parties hereto each warrant and represent to the other that they, and each of them, fully understand all the terms, covenants, conditions, provisions and obligations incumbent upon each of them by virtue of this Agreement to be performed, or contemplated by each of them to be performed, and each believes the same to be fair, just, reasonable and to their respective individual best interests; and

NOW, THEREFORE, in consideration of the premises and of the covenants and promises contained herein; the parties hereto stipulate and mutually agree as follows:

### ARTICLE I
### SEPARATE AND APART

1.    Subject to the terms hereof, the parties will continue to live separate and apart from each other and be free from any marital control or authority of the other party as fully as if each were sole and unmarried; and neither shall molest, disturb, hinder or interfere with the other to cohabit or dwell with him or her, or institute any proceeding for the restoration of conjugal rights, by any legal or other proceeding, or by any other form of coercion or control.

4

2.    From and after the date hereof, each party may conduct, carry on and engage in any employment, profession, business or trade or any other activity which to him or her may seem fit, advisable or desirable, free from any control, restriction or interference, direct or indirect, by the other party.

3.    The parties acknowledge that there is now an Action for Divorce pending by the Husband against the Wife, which was commenced on September 18, 2003, by the Husband serving the Wife with a Summons for Divorce on the grounds of living apart pursuant to a written Separation Agreement.   Both parties agree to allow this action to proceed on the uncontested matrimonial calendar.

4.    The Husband and Wife agree to cooperate with each other in executing the necessary documents, should either party desire to obtain a Jewish religious divorce, also known as a Get.

### ARTICLE II
### NO MOLESTATION

1.    Neither party shall in any way molest, disturb, or trouble the other, or interfere with the peace and comfort of the other, or compel, or seek to compel, the other to associate, cohabit, or dwell with him or her, by any action or proceeding for the restoration of conjugal rights by any means whatsoever.

2.    Neither party hereto, except as hereinafter provided, will without consent of the other, visit or knowingly enter into

5

the house or place where the other may dwell or reside, or be, or may work, or have a place of business.

3.   Neither party shall directly or indirectly make statements to each other, or any other persons, which are derogatory to the other party.

## ARTICLE III
## SEPARATE OWNERSHIP

Subject to the provisions of this Agreement, each party shall own, free of claim or right of the other, all of the items of property, real, personal and mixed, of any kind, nature or description and where so ever situate, which are now owned by him or her, or which are now in his or her name, or to which he or she is or may be entitled to, or which may hereafter belong to or come to belong to him or her, as if he or she were unmarried.

## ARTICLE IV
## APPLICABLE LAWS

1.   The parties each acknowledge that this Agreement is executed under and governed by the DRL as it existed at the time of the execution of this Agreement, including, without limitation, the provisions of §236(B) §240(1b).

2.   Each of the parties represents and acknowledges that he or she is aware of and understands his or her rights in the property acquired during the marriage and that he or she has been provided with a copy of the CSSA.  In light of this and in light

6

of the law applicable to this Agreement (the "Equitable Distribution Law"), the parties have entered into this Agreement.

### ARTICLE V
### MUTUAL RELEASE AND DISCHARGE
### OF CLAIMS IN ESTATES

1. That except as provided herein, the Husband agrees to release, and hereby does release, any and all claims to or upon the property of the Wife, whether real or personal, marital or separate and whether now owned or hereafter acquired, to the end that she shall have free and unrestricted right to dispose of her property now owned or hereafter acquired, free from any claim or demand of the Husband, and so that her estate and all income there from derived or to be derived shall go and belong to the person or persons who become entitled thereto by Will or devise, bequest, intestacy, administration or otherwise as if the Husband died during the lifetime of the Wife. Without any manner limiting the foregoing, the Husband expressly relinquishes any and all right of election to take any share of the estate of the Wife, as in intestacy, including without limiting the foregoing, any right of election pursuant to the provisions of Section 5-1.1 of the Estates, Powers and Trusts Law of the State of New York, or pursuant to any other law of any jurisdiction as said laws may now exist or may hereafter be amended, and any and all other right and interest in any real or personal property of which the Wife may die seized or possessed, and the Husband renounces and

7

covenants to renounce, any right of administration upon the estate of the Wife, if and as required or permitted by the laws or practices of any jurisdiction whatsoever.

2.   That except as provided herein, the Wife agrees to release, and does hereby release, any and all claims to or upon the property of the Husband, whether real or personal, marital or separate and whether now owned or hereafter acquired, to the end that he shall have the free and unrestricted right to dispose of his property now owned or hereafter acquired, free from any claim or demand of the Wife, and so that his estate and all income there from derived or to be derived shall go and belong to the person or persons who become entitled by Will or devise, bequest, intestacy, administration or otherwise, as if the Wife had died during the lifetime of the Husband.   Without, in any manner, limiting the foregoing, the Wife expressly relinquishes all rights in the estate of the Husband and expressly relinquishes any and all right of election to take any share of the estate of the Husband, as intestacy, including, without limiting the foregoing, any right of election pursuant to the provisions of Section 5-1.1 of the Estates, Powers and Trust Law of the State of New York, or pursuant to any other law of any jurisdiction as said laws may now exist or may hereafter be amended, and any and all other right and interest in any real or personal property of which the Husband may die seized or possessed, and the Wife renounces, and covenants to renounce, any right of administration

8

upon the estate of the Husband if and as required or permitted by
the laws of practice of any jurisdiction whatsoever.

3. That nothing herein contained shall be deemed to
prevent either party from making a bequest to the other in any
Last Will and Testament executed by the other subsequent to the
execution of this Stipulation.

### ARTICLE VI
### MUTUAL RELEASE AND DISCHARGE
### OF GENERAL CLAIMS

1. That except for the obligations, promises and
agreements set forth herein and to be performed by the parties
hereto, which are expressly reserved, each of the parties, for
himself and herself and for his or her legal representatives,
forever releases and discharges the other of them and his or her
heirs and legal representatives from any and all debts, sums of
money, accounts, contracts, claims, cause or causes of action,
suits, dues, reckoning, bonds, bills, specialties, covenants,
controversies, agreements, promises, variances, trespasses,
damages, judgments, extends, executions and demands whatsoever,
in law or in equity, which each of them had, now has or hereafter
can, shall or have against the other by reason or any matter up
to the date of the execution of this Separation Agreement,
including (without limitation) all claims with respect to all
marital and separate property as that term is used in the New

9

York Domestic Relations Law Section 236 or arising out of the marital relationship and except as provided in this Stipulation.

2.    The parties acknowledge that their respective attorneys have fully explained and discussed with them the content and meaning of the provisions of Domestic Relations Law Section 236 and that each fully understands the nature and extent of the claims he or she makes against him or her.   They intend this Separation Agreement and its provisions to be in lieu of each of their respective rights, pursuant to all aspects of Domestic Relations Law Section 236 (B).  Accordingly, except to the extent provided in this Separation Agreement, the parties mutually waive their rights and release each other from all claims of maintenance, distribution of marital property, distributive awards, special relief or claims regarding separate property or increase in the value thereof.

### ARTICLE VII
### RESPONSIBILITY FOR DEBTS

1.    That the Wife represents and warrants to the Husband that she has not contracted any debts, charges or liabilities (except as provided herein) for which the Husband, his legal representatives, or his property or estate may be or become liable, which are not specifically set forth in this agreement. The Wife covenants and agrees that she will not at any time incur or contract any debts, charge or liability whatsoever for which the Husband, his legal representatives or his property or estate

10

may be or become liable.  The Wife further covenants and agrees
to keep the Husband free, and harmless and indemnified from any
and all debts, charges, or liabilities heretofore or hereafter
contracted by her.  In the event of the Wife's death prior to the
payment of said debts, the Wife's estate shall be liable for said
debts.

2.    That the Husband represents and warrants to the Wife
that he has not contracted any debts, charges or liabilities
(except as provided herein) for which the Wife, her legal
representatives, or her property or estate may be or become
liable, which are not specifically set forth in this agreement.
The Husband covenants and agrees that he will not at any time
incur or contract any debt, charge or liability whatsoever for
which the Wife, her legal representatives on her property or
estate may be or become liable.  The Husband further covenants
and agrees to keep the Wife free, and harmless and indemnified
from any and all debts, charges, or liabilities heretofore or
hereafter contracted by him.     In the event of the Husband's
death prior to the payment of said debts, the Husband's estate
shall be liable for said debts.

## CREDIT CARDS

3.    Each party represents to the other that they have
previously delivered all credit cards, charge plates and all
other indicia of credit, if any, which he or she possesses in the
name of the other, and will deliver any such credit cards, charge

11

plates or other indicia of credit which he or she may in the future receive, which either bear the name of the Husband or the Wife, as the case may be, or are issued on his or her credit or name. If either party uses such credit cards, charge plates or other indicia of credit, he or she shall bear the sole responsibility for any obligation thereon and such party shall indemnify and hold the other harmless from any claims made. The party who improperly uses such credit cards, charge plates or other indicia of credit in the name of the other party shall be solely responsible to pay the legal fees, cost and expenses incurred by such party in having to defend any legal proceeding brought as a result of a default in the payment of such charge.

4.    The parties acknowledge the existence of a mortgage on the Greenhedges property taken out by the Husband, currently in the approximate amount of $145,900 to Ponce De Leon Bank, loan Redacted . The Wife hereby agrees to pay the current monthly mortgage payments of approximately $1,800 and to keep this mortgage current.

### ARTICLE VIII
### SPOUSAL SUPPORT

1.    Taking into consideration all presently existing relevant facts and circumstances of the parties, the Wife does not seek or require any maintenance at the present time or in the future, and therefore no provision for the support of the Wife is

12

made herein.   The Wife waives her right to support and the Husband's obligation to provide the same.

2.    Taking into consideration all presently existing relevant facts and circumstances of the parties, the Husband does not seek or require any maintenance at the present time or in the future, and therefore no provision for the support of the Husband is made herein.   The Husband waives his right to support and the Wife's obligation to provide the same.

## ARTICLE IX
### MEDICAL COVERAGE

1.    The Husband agrees to continue to maintain and pay for medical insurance for the Wife, in the same form and substance as that which he is currently providing, said insurance currently being provided at a cost of $507.66 per month, and deducted from the Husband's pension, one-half of which shall be paid by the Wife, until the entry of a Judgment of Divorce, provided the Wife continues to provide the Husband with the funds necessary to pay for said insurance, and provided medical insurance for the Wife is available to the Husband under whatever insurance plan he is currently covered under.   The Wife shall be solely responsible for any default or co-pays under said policy.

2.    The Husband shall furnish to the Wife whatever current identification cards, if any, may be issued by the various insurance companies involved to enable her to exhibit the same in

13

connection with obtaining any medical, surgical or hospital service for herself.

3.    The parties shall each indemnify and hold the other harmless for any and all medical and/or dental expenses rendered to each other by a provider.

4.    The Wife acknowledges that she shall be solely responsible to procure and maintain medical insurance coverage for herself upon the entry of the Judgment of Divorce. The Husband agrees, however, that he shall do all acts and execute all documents necessary to effectuate continuation coverage for the three (3) years provided for under Public Law 99-272, Title X-Private Health Insurance Coverage (also known as COBRA) for the Wife, including, without limitation, giving proper notice to his insurance plan administrator, so long as the Wife shares in the process. The Wife shall be responsible for the payment of all premiums for said insurance and for payments of all deductibles and co-payments.

### ARTICLE X
### PENSION PLANS

1.    The Wife represents that she is not entitled to receive any pension, retirement, or non-wage compensation benefits during the years of employment.

2.    The parties acknowledge that the Husband is retired and has acquired pension retirement or non-wage compensation

14

16/05 '08 VRI 07:47 FAX 31 20 57 68761          OPERATIONS EMEA                                    ☑018

benefits, during his years of employment from the New York State Teacher's Retirement System.

3.     Simultaneously with the signing of this Agreement, the Wife forever waives any and all claims she may have now or in the future in and to any pension retirement and non-wage compensation which have heretofore accrued or which may hereafter accrue to the Husband.

4.     The Wife hereby covenants and agrees that she will execute any spousal waivers that may be required under the Pension Reform Act of 1974, the Retirement Equity Act of 1984, or any similar Federal or state statute that is now in effect or may be enacted.   Nothing herein shall be deemed to waive either party's social security rights.   This paragraph is intended to substitute for any other statement, prepared form, or document which might be required by any plan, fund, trust administrator, trustee, or similar entity or person, so that each party may receive said benefits as if the parties were never married.

## ARTICLE XI
### EQUITABLE DISTRIBUTION

1.     That the parties have been advised by their respective counsel of the Equitable Distribution Law, as contained in Section 236 of the Domestic Relations Law and other related sections thereof, and by the terms of this agreement, the parties have distributed to their mutual satisfaction all of their marital property, together with any and all rights to a

15

distributive share therein, after full financial disclosure by both parties. The parties further acknowledge that the distribution of any bank accounts and other tangible property, plus the responsibility for the payment of debts and liabilities, takes into account and consideration the equitable distribution between the parties of the entire marital estate and the future earnings of the other, and this agreement, taken as a whole, represents a fair distribution of all the assets and meets the reasonable and expected needs of both parties. The parties further agree that the terms of this instant Agreement are fair, and reasonable and not unconscionable under the present circumstances.

2.   The Husband specifically waives any claim to or interest in and to any bank accounts in the Wife's name and same shall be deemed to be the sole and separate property of the Wife.

3.   The Wife specifically waives any claim to or interest in and to any bank accounts in the Husband's name and same shall be deemed to be the sole and separate property of the Husband.

4.   The Wife shall pay to the Husband, the sum of Twenty-five Thousand ($25,000.00) Dollars in full satisfaction of all claims by the Husband of non-taxable equitable distribution upon the execution of this Agreement.

### ARTICLE XII
### PERSONAL PROPERTY, BANK ACCOUNTS,
### AND HOUSEHOLD EFFECTS

1.   The parties have previously divided up their personal property.  All personal property which may hereafter belong to or come to the Wife shall be the sole and exclusive property of the Wife, and all property which may hereafter belong to or come to the Husband shall be the sole and exclusive property of the Husband.  Both parties shall have full power of disposition of his/her property as if he or she were unmarried.

2.   Each party shall herewith deliver to the other all property or documents evidencing ownership of property which by the terms of this Agreement is to remain or become the property of the other.

3.   The Husband currently maintains in his name alone, account *Redacted* , at the Suffolk County National Bank located on Montauk Highway, Montauk, New York.

4.   The Wife currently maintains in her name alone, account *Redacted* at Key Bank located at Montauk Highway, Oakdale, New York.  This account currently contains approximately $180,000. The Wife hereby agrees to bequeath the funds remaining in this account at the time and date of her death to the Husband upon her death and will amend her Will accordingly to satisfy this term. Should the Wife fail to amend her Will to memorialize the intent of the parties herein, then the Wife hereby agrees that the

17

Husband will have an irrevocable and valid claim against her estate for the amount remaining in this account upon the Wife's death.

5.    The Wife does and shall have title to a 1985 Dodge Ram truck, license "DODY B." The Wife hereby acknowledges that she is SOLELY responsible for maintaining this automobile, including registration and insurance, and hereby agrees to indemnify the Husband for any liability he may incur as a result of the operation of this vehicle, except if and when said vehicle is operated by the Husband.

## ARTICLE XIII
## GREENHEDGES

1.    If the parties have not already done so at the time this Agreement is executed by the parties, the Husband hereby agrees to transfer all of his right, title, and interest to the property known as Greenhedges, located in Montauk, New York, to the Wife. The above intention of transferring Greenhedges to the Wife may also be accomplished by transferring Greenhedges, Inc., a corporation in which the Husband is currently the sole shareholder, with the Husband subsequently transferring all of his stock in Greenhedges, Inc. to the Wife.

2.    The Wife hereby agrees to give the Husband a life estate in Greenhedges as long as he is able to take care of himself without the assistance of third parties. The parties

18

16/05 '08 VRI 07:48 FAX 31 20 57 68781          OPERATIONS EMEA                    ☑022

hereby agree to cooperate fully to accomplish the intent of this paragraph, including the modification and/or amending of the will of the Wife.

3.    The Wife shall be solely responsible for all carrying charges, and expenses on Greenhedges including, but not limited to, the monthly installments of interest and amortization on the mortgages, utilities, property insurance, real estate taxes and water.

4.    The parties represent that a first mortgage is held by Ponce de Leon Federal Bank in the approximate sum of $149,000. The Wife is solely responsible for payment of said mortgage and indemnifies the Husband on same.

## ARTICLE XIV
## PROPERTY SETTLEMENT AGREEMENT

A.    The parties acknowledge that this settlement is, when taken in conjunction with the provisions of the other Articles of this Agreement, in full satisfaction of any claims or rights that either party may have as hereafter set forth.

B.    The parties acknowledge and agree that the prior distributions of property, and the provisions of this Agreement, represent and set forth a fair and equitable distribution of their property or from the marital relationship or to which either may have any right, title or interest whether under the law or otherwise, and further acknowledge and agree that the said

19

division of property provided for herein represents a fair division of said property rights.

C.   The Wife further acknowledges and agrees that she is accepting the property set forth in this Agreement in full satisfaction of any claim to any property of the Husband, whether owned by him individually or jointly with the Wife or with any third party or parties, that she may have asserted, or may ever assert, including any claim under the "Equitable Distribution Law," or any other applicable law of the United States, the State of New York, or any other state, nation, territory or province now or hereafter having applicable jurisdiction.   The Wife further agrees and acknowledges that in accepting the said property, she is waiving and relinquishing any and all rights, under the law and under any other provision of law, to any property of the Husband which she has heretofore claimed or may hereafter claim, as well as the Husband's other properties.

D.   The Husband further acknowledges and agrees that he is accepting the provisions set forth in this Agreement in full satisfaction of any claim to any property of the Wife, whether owned by her individually or jointly with the Husband or with any third party or parties, that he may have asserted, or may ever assert, including any claim under the "Equitable Distribution Law" or any other applicable law of the United States, the State of New York, or any other state, nation, territory or province now or hereafter having jurisdiction over

20

the parties.   The Husband further agrees and acknowledges that, except as otherwise provided herein, in accepting the said provisions, he is waiving any and all rights, either under the law or any other provision of law, he is waiving any and all rights, either under the law or any other provision of law, to any property of the Wife which he has heretofore claimed, or may hereafter claim, as well as the Wife's other properties.

     E.   The parties agree that the provisions contained herein are fair, and reasonable and not unconscionable and that in taking into consideration the distributions made herein and the division of their property, the parties have considered the following:

    1. The income and property of each party at the time of marriage, and at the time of the commencement of the action;

    2. The duration of the marriage and the age and health of both parties;

    3. The loss of inheritance rights upon dissolution of the marriage as of the date of dissolution;

    4. The need, if any, for maintenance;

    5. Any equitable claim to, interest in, or direct or indirect contribution made, to the acquisition of marital property by the party not having title, including joint effort or expenditures and contributions and services as a spouse, parent, wage earner and homemaker, and to the career or career potential of the other party;

    6. The liquid or non-liquid character of all marital property;

    7. The probable future financial circumstances of each party;

21

8.  The impossibility or difficulty of evaluating any component or any interest in a business, corporation or profession and the economic desirability of retaining such asset or interest intact and free from any claim or interference by the other party.

9.  In addition, the parties have considered every other fact they deem relevant, and are possessed with the knowledge and opportunity to investigate, find out and discover the full and complete extent of the other's income, assets, liabilities, and property.  Both parties are aware of their right to have all such assets valued but accept the provisions contained herein in lieu hereof.

F.   No representations or warranties have been made by either party to the other, or by anyone else, except as expressly set forth in this Agreement and this Agreement is not being executed in reliance upon any representation or warranty not expressly set forth herein.  Without limiting the foregoing, no representations or warranties have been made by the Husband to the Wife, or by anyone else to the Wife, with respect to the past, present and future income or assets of the Husband and, without limiting the foregoing, no representations or warranties have been made by the Wife to the Husband, or by anyone else to the Husband, with respect to the past, present or future income or assets of the Wife.

G.   The parties intend this Agreement to constitute an agreement pursuant to DRL §236(B)(3).  They intend this Agreement and its provisions to be in lieu of each of their respective rights, pursuant to all aspects of DRL §236(B).  Accordingly, except to the extent provided in this agreement, the parties

22

mutually waive their rights and release each other from any claims of maintenance, distribution of marital property, distributive awards, special relief for claims regarding separate property or increase in the value thereof.

H.    The parties intend that their real and personal property division, as provided in this Agreement, shall be final and irrevocable.  Unless the parties execute a formal amendment to this Agreement, in writing, it is their intention that the Wife's separate property, as well as the property accorded to her under the terms of this Agreement, shall forever remain hers, and the Husband's separate property, as well as the property accorded to him under the terms of this Agreement, shall forever remain his, notwithstanding (a) the reconciliation of the parties; (b) the rescission or termination of this Agreement; and  (c) the remarriage of the parties, in the event they are divorced.

### ARTICLE XV
### FULL DISCLOSURE

1.    The parties represent and agree that each of them has to their mutual satisfaction, received all pertinent and necessary information as to the assets, property and income of the parties.  The parties further represent and agree that each of them has had a full opportunity to consult with an attorney regarding this information.  The parties represent that each has afforded the other the opportunity for full and complete

23

financial disclosure, including the right to exchange Statements of Net Worth.  The parties waive all future discovery.

2.    The parties have been advised of their right to have accountants, appraisers or others to investigate, appraise or evaluate the other's business and property; that each party has waived these rights and they have chosen not to take any further steps, themselves or through others, in connection with discovery, inspection, investigation, appraisal or evaluation of the other's business or property.


### ARTICLE XVI
### INCOME TAX RETURNS

1.    The parties agree that they will each file separate Federal and/or State income tax returns for the 2003 tax year, and each year thereafter.

2.    The parties shall indemnify and hold each other free and harmless from any liability or loss whatsoever with respect to any and all assessments for taxes on joint tax returns filed by the parties, insofar as such loss or liability may be applicable to each of the parties, including any interest and penalties which may be allocable to his or her participation in the joint return in question.

3.    The Wife agrees to indemnify the Husband and hold him harmless with regard to any and all outstanding tax debt arising from the business known as GREENHEDGES.  In addition, the Wife further agrees to reimburse the Husband for any tax liabilities

24

and/or deficiencies, incurred during the marriage for which any government agency may hold the Husband responsible.

4.   The Wife further agrees to indemnify the Husband and hold him harmless with regard to any prior income tax returns or any failure to file said returns.

### ARTICLE XVII
### LEGAL REPRESENTATION AND COUNSEL FEES

1.   The Husband has been represented by **JEANMARIE P. COSTELLO, ESQ.**, with offices at 455 Griffing Avenue, Riverhead, New York 11901.

2.   The Wife has been represented by **ROBERT C. HILTZIK, ESQ.**, 380 North Broadway, Penthouse West, Jericho, New York 11753.

3.   Each party shall be responsible for the payment of their own attorney's fees.

### ARTICLE XVIII
### VOLUNTARINESS

The parties acknowledge that they are entering into this Separation Agreement freely and voluntarily with knowledge of the financial condition, nature and character of their respective estates.   The parties have ascertained and weighed all the facts and circumstances likely to influence their judgment herein; that the Wife has sought and obtained legal advice independently of the Husband.   The Husband has sought and obtained legal advice

25

independently of the Wife.  Both the Husband and Wife have been fully apprised of their respective rights and obligations, both generally and hereunder.  All of the provisions hereof, as well as all questions pertaining thereto, have been fully and satisfactorily explained to both the Husband and the Wife.  The Husband and Wife have each given due consideration to such provisions and that they clearly understand and assent to all the provisions hereto.  Each of the parties has read this Separation Agreement prior to the signing hereof.

## ARTICLE XIX
### RECONCILIATION AND MATRIMONIAL DECREES

1.    That this Separation Agreement shall not be invalidated or otherwise affected by a temporary reconciliation between the parties hereto or a resumption of marital relations between them, unless the reconciliation or resumption be accompanied by a written statement signed by the parties setting forth that they are canceling this Separation Agreement.

2.    That this Separation Agreement shall not be invalidated or otherwise affected by any decree or judgment of divorce made by any Court in any action which may presently exist or may hereafter be instituted by either party against the other for a divorce.  The obligations and covenants of this Separation Agreement shall be incorporated into, and shall survive any decree of judgment of divorce and shall not merge therein, and

26

this Separation Agreement may be enforced independently of such decree of judgment.

3.    That in the event it becomes necessary for either party to enforce any provision of this Separation Agreement or subsequent matrimonial decree in a Court of competent jurisdiction, the prevailing party shall be entitled to recover of the other party the actual and reasonable sums incurred by him or her as and for attorney fees and expenses, notwithstanding that same may not have been paid by prevailing party at the time application for same is made. If an action is commenced to enforce any provision of this Separation Agreement and the default is thereafter cured, the defaulting party is still responsible for all reasonable attorney's fees incurred.

<u>**ARTICLE XX**</u>
<u>**GENERAL PROVISIONS**</u>

1.    That this Separation Agreement and all the obligations and covenants hereunder shall bind the parties hereto, their heirs, executors, administrators, legal representatives and assigns.

2.    That no modifications, rescission or amendment of this Separation Agreement shall be effective unless in writing and signed by the parties hereto; that no waiver of any breach or default shall be deemed to be waiver of any subsequent breach or default.

27

3.    That this Separation Agreement and its provisions merge all prior agreements, if any, of the parties, and is the complete and entire agreement of the parties.

4.    That this Separation Agreement and all matters affecting its interpretation and the rights and obligation of the parties hereunder shall be construed according to the laws of the State of New York as a Separation Agreement made and to be performed within the State of New York.

5.    That each of the parties hereto, without cost to the other, shall at any time and from time to time hereafter execute and deliver any and all further instruments and assurances and perform any acts that the other party may reasonably request for the purpose of giving full force and effect to the provisions of this Separation Agreement.

6.    That each of the parties acknowledged that neither of them has been induced to execute this Separation Agreement by reason of any representation or promise by or on behalf of the other party not herein contained, and that neither of the parties will, under any circumstances, assert or claim any invalidity of this Stipulation, or any provision thereof, by reason of any such representation or promise which may be claimed to exist.   The parties have incorporated into this Separation Agreement their entire understanding, no oral statement or prior written matter, extrinsic of this Separation Agreement, shall have any force or

28

effect; that the parties are not relying on any representation other than those expressly set forth herein.

7.    That in the event that any term, provision, paragraph or Article of this Separation Agreement is, or is declared illegal, void or unenforceable, the other terms, provisions, paragraphs or Articles of this Separation Agreement shall not be affected or impaired; that the doctrine of severability shall be applied; that the parties do not intend this statement to imply the illegality, voidness or of any term, provision, paragraph or Article of this Separation Agreement.

8.    That each of the parties has carefully read this Separation Agreement prior to the signing thereof.

9.    All notices shall be made in writing with proof of mailing.

## ARTICLE XXI
### BANKRUPTCY DOES NOT AFFECT OBLIGATIONS

1.    That the parties have consented to the terms of this Separation Agreement upon their reliance on the express representations made to each other that all of its terms, particularly those with respect to the payment of debts, maintenance, and distributive award/cash payments as provided herein, will be complied with in full.

2.    That accordingly, it is the parties' express intention that the said maintenance, and distributive award/cash payments

29

to be made pursuant to the terms of this Separation Agreement, shall not be terminated, diminished or in any way affected by the filing of a petition for bankruptcy, or making an assignment for the benefit of creditors by either party.

3.    That, therefore, in the event that either party files a petition in bankruptcy court or makes an assignment for the benefit of creditors, either of which would otherwise result in depriving the other of any payments due under this Separation Agreement, all payments or transfers herein intended as maintenance, "distributive awards" or "cash payments" shall be deemed to be payments for the other's maintenance, and the person filing under the Bankruptcy Laws shall be responsible for any tax consequences resulting there from.

4.    That it is the express intention of the parties that neither the Husband nor the Wife be allowed to use the Bankruptcy Laws to interfere with the intent of this Separation Agreement and, to that extent, each party waives any right he or she may now or in the future have under the Bankruptcy Laws that would interfere with the carrying out of the intent of this Separation Agreement.

**IN WITNESS WHEREOF**, the parties hereto have set their hands and seal the day and year first above written.

_____

**DODY BARUCH**


_____

**HOWARD CHASSEN**

30

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF                )

    On this __ day of _____, 2004, before me, the undersigned, personally appeared **DODY BARUCH**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

                                     _____
                                     Notary Public

STATE OF FLORIDA         )
                         ) ss.:
COUNTY OF BROWARD        )

    On this __ day of _____, 2004 before me, the undersigned, personally appeared **HOWARD CHASSEN**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

                                     _____
                                     Notary Public

11/24/2008 MON 14:20 FAX 718 448 6820 Danna Law Firm 004/034



ANTHONY S. DANNA, ESQ
MEMBER: NY, NJ, & FL BARS

SARA GONZALEZ-ACARON, ESQ
MEMBER: NY BAR

WWW.DANNALAW.COM
INQUIRY@DANNALAW.COM



**DANNA & ASSOCIATES, PC**
ATTORNEYS AT LAW



September 16, 2008

***VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED & 1ST CLASS MAIL***

Diversified Investment Advisors
4333 Edgewood Road, NE
Cedar Rapids, IA 54299
Attn: **Corporate Counsel**

Diversified Investment Advisors
4333 Edgewood Road, NE
Cedar Rapids, IA 54299
Attn: **Shareholder Services**

**Re:** **Annuity Account** ~~Redacted~~ **- Howard Chassen**
**Social Security #** ~~Redacted~~

Dear Sirs or Mesdames:

This firm is retained by Mark Chassen, the son of your above-captioned client, Howard Chassen, DOD: 03/31/2008. Mark Chassen is applying for appointment as Administrator of his father's estate.

Our client was told that neither he nor his brother, Michael Chassen, are the beneficiaries of this annuity account. It is suspected that the decedent's ex-wife, Dody Baruch, is the listed beneficiary

Please review your records and provide our firm with a copy of the in-force beneficiary designation for the above-referenced annuity account. Upon your review of same, please note the date of signing of said beneficiary designation.

Enclosed you will find copies of a certain *Judgment of Divorce* between Howard Chassen and Dody Baruch dated March 15, 2005 and a *Separation Agreement Between Dody Baruch and Howard Chassen* dated December 28, 1998.

---

1145 FOREST AVENUE
STATEN ISLAND, NY : 0310
TEL.: 718.273.0300
FAX: 718.448.6820

275 WATER STREET
NEW YORK, NY 10038
TEL.: 212.523.0007
FAX: 718.448.6820

1040 AMBOY AVENUE
EDISON, NJ 08837
TEL.: 732.521.4000
FAX: 718.448.6820

7431 W. ATLANTIC AVE., #49
DELRAY BEACH, FL 33448
TEL.: 561.498.5833
FAX: 718.448.6820

*G:\Data Files\TM\client\Chassen, Mark\08-4527\4COT\Diversified.DOC*

DANNA & ASSOCIATES, PC
ATTORNEYS AT LAW

You are hereby instructed to freeze this account and to not pay out proceeds until an agreement is reached between the parties or upon direction from the Court of competent jurisdiction.

Please do not hesitate to contact our Staten Island, NY office at 718.273.0300 if there are any questions and/or if any additional information is required.

Thank you in advance.

Very truly yours,
DANNA & ASSOCIATES, PC


By:    _____
       Anthony S. Danna, Esq.

ASD/bas
Enclosures
Cc:    Mark Chassen via email

At an IAS Term, Part 11 of the
Supreme Court of the State of
New York, held in and for the
County of Suffolk at the
Courthouse thereof located at
400 Carleton Avenue, Central
Islip, New York on the 15th day
of March , 2005.

P R E S E N T :

HON. ~~DONALD R. BLYDENBURGH~~
J.S.C.

---------------------------------x

HOWARD CHASSEN,
SS#: Redacted

Plaintiff,

- against -

DODY BARUCH,
SS#: Redacted

Defendant.

---------------------------------x

Index No.  03-22466

**JUDGMENT OF DIVORCE**

IAS JUSTICE: HON.DONALD
R. BLYDENBURGH

**ENTERED:** APR - 4 2005
**AT:** 2:39 PM

The Plaintiff having brought this action for a judgment of absolute divorce by reason of living apart pursuant to a written Agreement of Separation for more than one year, and the Summons bearing the notation "ACTION FOR A DIVORCE" and a statement of the ancillary relief demanded, having been duly served on the Defendant within this state, and the Plaintiff's Verified Complaint having been duly served upon ROBERT C. HILTZIK, ESQ., attorney for the Defendant, and Defendant not having answered, and the parties having entered into an Agreement of Separation on the 25th day of May, 1999, and subsequently entering into a

1

Modification of Separation Agreement on the 13th day of September, 2004, made in the settlement of this action, and the Defendant having thereafter signed a Defendant's Affidavit, consenting to the matter being placed on the uncontested calendar for divorce, and the Plaintiff having thereafter applied on due notice to the Defendant, to this Court for judgment for the relief demanded in the Complaint, at an IAS Term, Part II thereof, and the matter having been set down for submission on this date of March 15, 2005, 2005, and the Plaintiff having presented written proof of service in support of the essential allegations of the Complaint, and such proof having been read and considered by me, I decide and find as stated in the separate Findings of Fact and Conclusions of Law of even date herewith:

NOW, on motion of **JEANMARIE P. COSTELLO, ESQ.**, attorney for the Plaintiff, it is

ADJUDGED, that the marriage between the **HOWARD CHASSEN**, as Plaintiff, and **DODY BARUCH**, as Defendant, is hereby dissolved by reason of living apart pursuant to a written Agreement of Separation, for a period of one or more years, and it is further

ORDERED AND ADJUDGED, that the Separation Agreement dated May 25, 1999 and subsequent Modification of Separation Agreement dated September 13, 2004, copies of which are on file with this Court, are incorporated in this judgment by reference, shall survive and shall not be merged in this Judgment, and the parties hereby are directed to comply with every legally enforceable term

and provision of such Separation Agreements, including any provision to submit an appropriate issue to arbitration before a single arbitrator, as if such term or provision were set forth in its entirety herein, and the Court retains jurisdiction of this matter for the purpose of specifically enforcing such of the provisions of those Separation Agreements as are capable of specific enforcement, to the extent permitted by law, and of making such further judgment with respect to maintenance and support as it may find appropriate under the circumstances at the time application for that purpose is made to it, or both, and it is further

**ORDERED AND ADJUDGED** that the Defendant may resume the use of her maiden name, to wit: BARUCH.

E N T E R :



GRANTED

MAR 1 5 2005

Edward P. Romaine
Clerk of Suffolk County

**DONALD R. BLYDENBURGH**

_____
J.S.C.

3

TY CLERK'S OFFICE
OF NEW YORK                SS.:
TY OF SUFFOLK

I, EDWARD P. ROMAINE, Clerk of the County of Suffolk and

urt of Record thereof, do hereby certify that I have compared the

d with the original **JUDGMENT** . . FILED in my

APR - 4 2005

. . . . . . . . . . . . . . . . . . . . . . . . . . . . and, that the same is a true

hereof, and of the whole of such original.

In Testimony Whereof, I have hereunto set my hand and affixed

al of said County and Court this . . . . . . APR - 4 2005

. . . . . . . . . . . . . . . . . . . . . . . Clerk.

. 236                                    12-182..12/19ca

# SEPARATION AGREEMENT

## BETWEEN

## DODY BARUCH

### and

## HOWARD CHASSEN

Agreement made and entered into this     day of          November, 1998, by and between DODY BARUCH (hereinafter referred to as the "plaintiff" and/or "Wife"), now residing at GREENHEDGES, Montauk New York and HOWARD CHASSEN (hereinafter referred to as the "defendant" and/or "Husband"), now residing at GREENHEDGES, Montauk New York (the Husband and the Wife being hereinafter sometimes collectively referred to as the "Parties").

## W I T N E S S E T H :

WHEREAS, the parties were married to each other on the 13th day of February, 1988, in the City of New York, State of New York; and

WHEREAS, the parties have resided in New York as Husband and Wife since February, 1988;

WHEREAS, there are no issue of the parties; and

WHEREAS, the parties, in consequence of disputes and irreconcilable differences have separated and are living spearate and apart from each other, and have voluntarily and mutually agreed to continue to live separate and apart; and



2

WHEREAS, the parties desire to adjust and settle by agreement all matters concerning their respective property rights, the support and maintenance of the parties, and all other rights and obligations arising out of the marriage and otherwise; and

WHEREAS, the parties hereby agree that this Separation Agreement (hereinafter "Agreement"), which is entered into after due and considered deliberation, shall be and constitute an agreement between Wife and Husband and that the parties have agreed upon the terms of settlement of their respective rights, present and inchoate, as to each other's estate and as to any funds, assets or property, both real and personal, wherever situated, now owned or claimed by the parties or either of them, or standing in their respective names or which may hereafter be acquired by either of the parties, and any and all causes of action, in law or in equity, except as hereinafter provided, existing in favor of either party as against the other; and the claim of the Husband for support and the amount of support, to be paid by the Wife to the Husband for maintenance; and all other issues between the parties in this action, all as hereinafter provided; and

WHEREAS, each party is being represented by separate and independent counsel of his or her own choosing with whom each has discussed and been advised of their respective legal rights, remedies, privileges and obligations arising out of the marital relation or otherwise and the terms of this Agreement, the Wife represented by BUNTING & HILTZIK, the Husband choosing to proceed in this matter without benefit of counsel, despite being advised by Bunting & Hiltzik to seek advice and review of counsel; and

WHEREAS, the parties are entering into this Agreement of their own free will, and without force, coercion or duress of whatever nature; and

WHEREAS, each of the parties fully understands the terms, covenants and conditions of this Agreement and is of the belief that said Agreement is fair, just, adequate and reasonable as to each of them, and after due consideration, freely and voluntarily accepts and agrees to said terms, conditions and provisions; and

3

WHEREAS, the parties have had explained to them the provisions of law affecting the financial and property rights of spouses, and they make this Agreement in full and complete satisfaction of all claims each may have against the other under any law; and

WHEREAS, the parties acknowledge and intend then this Stipulation is entered into and is to be governed by Section 236, Part B of the Domestic Relations Law of the State of New York, commonly known as the Equitable Distribution Law and that all factors contained in said section were considered in entering into this Agreement; and

WHEREAS, the parties each warrant and represent to the other that they and each of them fully understand all of the terms, covenants, conditions, provisions and obligations incumbent upon each of them by virtue of this Agreement to be performed or contemplated by each of them hereunder and each believe the same to be fair, just, reasonable and to his/her respective best interests; and

WHEREAS, there has been full and complete financial disclosure by each party to the other which included each having been fully informed of the other's assets, property, holdings, income and prospects.

NOW, THEREFORE, in consideration of the promises and agreements hereinafter set forth, the parties hereby stipulate, covenant and agree as follows:

## ARTICLE I

## SEPARATION

It is, and shall be, lawful for each of the parties hereto at all times and for the rest and remainder of their lives to live separate and apart from each other, and each party shall be entirely free from any marital control or authority of the other; as if each was sole and unmarried. Neither party shall directly or indirectly compel or attempt to compel the other to live with him or her, as the case may be, and the parties may contract, carry on and engage in any occupation, activity, employment, business or profession without the consent of the other party hereto and free from

4

control, restraint, or interference, directly or indirectly, by the other in all respects as if such parties were sole and unmarried, except as otherwise specifically provided for in this Agreement;

## ARTICLE II

### NON-MOLESTATION

Except as otherwise set forth in this Agreement, neither of the parties shall interfere with the other in his or her respective liberty of action or conduct, nor in any way molest, disturb or trouble the other or interfere with the peace and comfort of the other, and, except as otherwise set forth in this Agreement, each agrees that the other may at any and all times reside and be in such places and with such relatives, friends and acquaintances as he or she may choose, and each party agrees that he or she will not interfere with the other or compel or seek to compel the other to cohabit, associate or dwell with him or her. Neither party shall interfere with nor harass the other at their respective residences or places of employment.

## ARTICLE III

### APPLICABLE LAWS

1. The Wife and the Husband each acknowledge that this Agreement is executed under, and this Agreement will be governed by and under, the Domestic Relations Law of the State of New York ("DRL") as it now exists including, without limitation, the provisions of §236, Part B. of the Domestic Relations Law of the State of New York commonly known as the "Equitable Distribution Law".

2. Each of the parties represents and acknowledges that he or she is aware of and understands his or her rights in the marital property acquired during the marriage. In light of this and in light of the law applicable to this action, including the "Equitable Distribution Law", the parties have entered into this Agreement.

3. Each party has made independent inquiry into the complete financial circumstances of the other and represents to the other that he or she is fully informed of the income, assets, property and financial prospects of the other, is aware of all marital property as that term is



5

defined in Domestic Relations Law Section 236 and is satisfied that full disclosure has been made, and that neither party can appropriately make a claim against the other by reason of failure to disclose or failure of knowledge of the financial circumstances of the other. Each has had a full opportunity and has consulted at length with his or her attorney regarding all of the circumstances (other than tax consequences) hereof, has obtained separate tax advice, and acknowledges that this Agreement has not been the result of any fraud, duress or undue influence exercised by either party upon the other or by any other person or persons upon the other. Both parties acknowledge that this Agreement has been achieved after full disclosure, competent legal representation and honest negotiations.

4. Any property acquired by either party subsequent to the date of this Agreement shall not be deemed as having been acquired "during the marriage" or denominated marital property, and any such property shall be exempt from distribution in the event of divorce, except as may be provided in this Agreement.

5. That the parties herein are aware of the provisions of Section 236-B of the Domestic Relations Law, denominated Equitable Distribution Laws, and make this Agreement pursuant to Section 236, Part B(3)(2) which authorizes the parties to agree upon a division of separate and marital property and grants to the parties the option of deciding for themselves what property is the separate property of each and agreeing upon a distribution in lieu of leaving the decision to the court.

6. That the parties, in making this Agreement have taken into consideration such factors as the court is obliged to consider in accordance with Section 236, Part B(5)(d), 6 and 7 of the Domestic Relations Law.

7. Each party further acknowledges and agrees that he/she is accepting the property set forth in this Agreement in full satisfaction of any claim to any property of the other party, whether owned by him/her individually or jointly with the other party or any third party or parties, that he/she may have, may have asserted or may ever assert, including any claim under the Domestic Relations Law of New York, or any other applicable law of the United States, the State of New



6

York, or any other state, nation, territory or province now or hereafter having applicable jurisdiction. Each party further agrees and acknowledges that in accepting the said property, he/she is waiving and relinquishing any and all rights, under the said law and under any other provision of law, to any property of the other party which he/she has heretofore claimed, or may hereafter claim, as well as the other party's other properties, including, but not limited to, the other party's interests in the following:

    (a) Greenhedges except as provided herein;

    (b) Any pension plan, Keogh, SEP or IRA;

    (c) Any savings accounts, money market accounts, checking accounts, certificates of deposit, securities, stock options, stock rights, stock option plans and/or bonuses, and the like;

    (d) Any professional, technical or college degree;

    (e) Any real property; and

    (f) Any other property belonging to, in the name of, or used or possessed by, the other alone, or the other with anyone, including any party to this Agreement.

    8. Each party hereby consents and agrees that the New York State Supreme Court, Suffolk County shall maintain jurisdiction, concurrent with the Family Court, to enforce any and all provisions of this Agreement as well as any court determination arising from or out of this Agreement.

## ARTICLE IV

## SUPPORT AND MAINTENANCE OF THE WIFE

Maintenance for the Wife is hereby waived, with the exception of the Husband continuing to provide medical insurance for the Wife in the same form and substance as that which he is currently providing, said insurance currently being provided at a cost of $355 per month, deducted from the Husband's pension.

7

## ARTICLE V

### SUPPORT AND MAINTENANCE OF THE HUSBAND

1. As and for the support and maintenance of the Husband, ONLY (1) when the Husband is NOT living at Greenhedges and ONLY (2) if Redacted , Oakdale, New York has been sold, the Wife shall provide the Husband with the sum of $1,700 per month to be paid by check or money order drawn to the Husband's order and forwarded on the FIRST of each month, commencing with the first FULL MONTH following execution of this Agreement and the satsifaction of the conditions mentioned in this paragraph, to the address provided in writing by the Husband. Said support and maintenance shall continue until either the death of the Husband or the death of the Wife, whichever occurs first. When Husband is living at Greenhedges, Husband shall NOT be entitle to nor shall he receive any maintenance from Wife and Wife will NOT be responsible for paying any maintenance to Husband.

2. Should Redacted , Oakdale, New York not be sold, then the Husband agrees to live at : Redacted . Oakdale, New York. Wife agrees to pay the maintenance of $1,700 per month as long as Husband resides at Redacted under the terms and conditions of this paragraph.

## ARTICLE VI

### PERSONAL PROPERTY. BANK ACCOUNTS AND HOUSEHOLD EFFECTS

1. The parties have determined not to divide up their personal property at this time. All personal property which may hereafter belong to or come to the Wife shall be the sole and exclusive property of the Wife, and all property which may hereafter belong to or come to the Husband shall be the sole and exclusive property of the Husband. Both parties shall have full power of disposition of his/her property as if he or she were unmarried.



8

2. Each party shall herewith deliver to the other all property or documents evidencing ownership of property which by the terms of this Agreement is to remain or become the property of the other.

3. The parties hereby acknowledge the existence of a bank account #: Redacted in the name of Greenhedges, Inc. at the Suffolk County National Bank located at Montauk Highway, Montauk, New York. This account currently has approximately $17,000 on deposit. The parties hereby agree that this account shall be used EXCLUSIVELY for expenses solely related to the operation of Greenhedges Bed and Breakfast and both parties hereby waive any perosnal right or interest in the assets of this account.

4. The parties hereby acknowledge the existence of a bank account #. Redacted at the Suffolk County National Bank located at Montauk Highway, Montauk, New York. This joint account in the names of Dody Baruch and Howard Chassen currently has approximately $11,000 on deposit. The parties hereby agree that this account may be used by EITHER party for their own personal use to pay pesonal expenses, with the exception that NO PARTY may write out a check or checks for personal expenses for the sum of more than $500 within a two week period without the approval of the other party in writing. *Co-signatures* Husband and Wife hereby agree to continue to deposit any and all income they may receive into this account as long as said income is received, EXCEPT the money Wife does receive or may receive from the sale of the real property located at Redacted Oakdale, New York. That money shall remain the exclusive property of the WIfe. Husband hereby waives any claims and/or interest to the proceeds of the sale of the real property located at Redacted kdale, New York.

5. Husband currently maintains in his name alone account #Redacted at the Suffolk County National Bank located at Montauk Highway, Montauk, New York. Husband currently has deposited into this account by Direct Deposit the Husband's Social Security check of $1048 monthly and Husband's $865 teacher's pension check. Husband hereby agrees to deposit his Social Security check of $1048 into the joint account *Continue* mentioned in paragraph "4" above, said account being account #. Redacted at the



9

Suffolk County National Bank located at Montauk Highway, Montauk, New York. The
$865 teacher's pension check will hereinafter be deposited into Husband's account # Redacted
at the Suffolk County National Bank located at Montauk Highway, Montauk, New York and
mentioned below in paragraph "8" for the use of Husband's mother should Husband so choose.
If and when Husband's mother pre-deceases Husband, Husband hereby agrees to thereafter
deposit said pension check of approximately $865 into the joint account mentioned in
paragraph "4" above, said account being account # Redacted at the Suffolk County
National Bank located at Montauk Highway, Montauk, New York.

6. The parties hereby acknowledge the existence of a joint Schwab One account
Redacted located in Schwab's office located in Islandia, New York. This joint-tenancy
account with right of survivorship in the name of Dody Baruch and Howard Chassen currently is
worth approximately $30,000 - $40,000. The parties hereby acknowledge that they intend to
maintain this account as a joint account. Each party may withdraw up to one-half of the value
of this account during their lifetime, said value determined as of the date this Agreement is
executed by both parties. Each party hereby acknowledges that neither parties estate shall have
any claim against this account, the account going to the survivor of the parties. For example, if
Wife pre-deceases the Husband, then Husband shall be sole owner of this account, to do with the
account as he chooses at his sole discretion.

7. Wife currently maintains in her name alone account # Redacted at Key Bank located at
Montauk Highway, Oakdale, New York. This account currently contains approximately
$180,000. Wife hereby agrees to bequeath the funds remaining in this account at the time and
date of her death to the Husband upon her death and will amend her Will accordingly to satisfy
this term. Should Wife fail to amend her Will to memorialize the intent of the parties herein, then
Wife hereby agrees Husband will have an irrevocable and valid claim against her Estate for the
amount remaining in this account upon Wife's death.

8. Husband currently maintains in his name alone account # Redacted at the Suffolk
County National Bank located at Montauk Highway, Montauk, New York. The parties hereby

acknowledge that Husband maintains this account EXCLUSIVELY for the purpose of helping to support his elderly mother. ~~Husband~~ Parties hereby agrees to bequeath the funds remaining in this account at the time and date of his death to the Wife upon his death and will amend his Will accordingly to satisfy this term. Should Husband fail to amend his Will to memorialize the intent of the parties herein, then Husband hereby agrees Wife will have an irrevocable and valid claim against his Estate for the amount remaining in this account upon Husband's death.

9. The Wife does and shall have title to a 1985 Dodge Ram Truck, license #"DODY B". Wife hereby acknowledges that she is SOLELY responsible for maintaining this automobile, including registration and insurance, and hereby agrees to indemnify Husband for any liability he may incur as a result of the operation of this vehicle, except if and when said vehicle is operated by Husband.

10. The parties hereby acknowledge the existence of a 1989 Ford Country Squire. This vehicle is currently registered in the name of the Husband. The parties hereby acknowledge that this vehicle is used for purposes of LOCAL driving ONLY. The parties hereby agree that if the Husband decides to permanently relocate **more than ten (10) miles** away from Greenhedges, then Wife will pay to the Husband the sum of $1,500 to be used by Husband towards the purchase of a vehicle to be registered in his name and insured by him. Husband hereby acknowledges that he is SOLELY responsible for maintaining this automobile, including registration and insurance, and hereby agrees to indemnify Wife for any liability she may incur as a result of the operation of this vehicle.

11. Any stocks, bonds, cash, bank accounts or any other assets in the name of the Husband solely, and not specifically covered by this Agreement, shall be considered to be separate property of the Husband. Husband hereby agrees to bequeath any stocks, bonds, cash, bank accounts or any other assets in the name of the Husband solely, and not specifically covered by this Agreement, covered by this paragraph at the time and date of his death to the Wife upon his death and will amend his Will accordingly to satisfy this term. Should Husband fail to amend his Will to memorialize the intent of the parties herein, then Husband hereby agrees Wife will have an

11

irrevocable and valid claim against his Estate for the amount remaining in this account upon Husband's death.

12. Any stocks, bonds, cash, bank accounts, or any other assets in the name of the Wife solely, and not specifically covered by this Agreement, shall be considered to be separate property of the Wife. Wife hereby agrees to bequeath any stocks, bonds, cash, bank accounts or any other assets in the name of the Wife solely, and not specifically covered by this Agreement, covered by this paragraph at the time and date of her death to a trust in which the Husband is the income beneficiary and in which Rabbi Steven Moss is the corpus beneficiary upon Husband's death, and Wife agrees to amend her will accordingly to satisfy this term. Should Wife fail to amend her Will to memorialize the intent of the parties herein, then Wife hereby agrees Husband will have an irrevocable and valid claim against her Estate for the projected income mentioned above.

13. Any joint stocks, bonds or bank accounts jointly held by the parties and not specifically covered by this Agreement shall remain jointly held, with right of survivorship to the surviving spouse, even if the above-mentioned accounts do not specifically state this, the intent of the parties being that the surviving party shall immediately, upon the death of the other party, be entitled to exclusive ownership and control of the assets referred to in this paragraph.

14. The Wife and Husband hereby agree that, if legally possible, they each shall provide and hereby intend that each party shall bequeath to the surviving party any interest the party may have at the time of their death in any and all pension and/or profit sharing plans, stock options, tax shelter investments, capital contribution to any partnership, deferred compensation, group and/or private life insurance policies, businesses, corporations and professional licenses and practices not covered by this Stipulation, with the effect that the surviving party, whether it be the Husband or the WIfe, shall receive any surviving interest of the other party in the property mentioned in this paragraph.

15. The parties acknowledge and agree that by this Agreement and, more specifically, pursuant to the division of the personal property of the parties pursuant to this Article and the real



12

property of the parties pursuant to Article VII set forth below, they have equitably distributed between them, to their mutual satisfaction, pursuant to Sect. 236, Part B of the Domestic Relations Law of the State of New York, all of the separate and marital property of the parties, and both the plaintiff and defendant agree that the division of said properties pursuant to the terms of this Agreement is fair and reasonable.

16. Except as herein provided, neither party shall have any interest in any and all tangible or intangible property of any kind, nature or description, in the name of the other, jointly, individually, in trust, or in any other manner, whenever or however acquired and regardless of the manner in which title or ownership is held or reflected, including, but not limited to, the other's interest in stocks, bonds or other financial instruments, general or limited partnership interests, real estate, mortgages, equipment, pension or profit sharing plans in which either party possessed, possesses or will possess a real or beneficial interest, either past, present or future, nor any interest in income, fees or other revenues derived from such interests, all of which shall be solely the property of the Wife and Husband respectively.

17. The parties hereby agree that the real property located at _Redacted_ Oakdale, New York, is deemed the sole and exclusive property of the Wife and the Husband, in consideration of the terms of this Agreement, hereby waives any interest he may have to this property.

## ARTICLE VII

## GREENHEDGES

1. If the parties have not already done so at the time this Agreement is executed by the parties, the parties hereby agree to cooperate in depositing the property known as "Greenhedges", located in Montauk, New York, into a trust, with the Trustee being _____, said trust for the benefit of _____, with

13

_____ the income beneficiary.  The parties hereby agree to coperate fully to accomplish the intent of this paragraph.

## ARTICLE VII

### DEBTS

1. Except as otherwise set forth herein, the Wife covenants, warrants and represents to the Husband that she has not incurred or contracted any debt or obligation for herself for necessaries or otherwise, which the Husband or his estate is or may become liable. The Wife shall not incur or cause to be incurred any debt or liability whatsoever whether for necessaries or otherwise upon the credit of the Husband for which the Husband or his estate may be or may become liable and the Wife shall and will hold the Husband free and harmless from and indemnify him against any and all debts, liabilities and obligations of any and every kind that may be incurred hereafter or contracted by her hereafter for her benefit, including any loss, expenses and damages, including reasonable attorney's fees which may be incurred by the Husband or his estate in connection with the breach by the Wife of her obligations under this paragraph. The Husband or his estate promises to notify the Wife if any claim is made against him or his estate as a result of any debt, charge or liability incurred by the Wife and shall afford the Wife an opportunity to defend against any such claims at her sole cost and expense. The Husband shall indemnify and hold the Wife harmless from all such items he is required to pay, including reasonable attorney's fees to the Wife if she is sued on account thereof.



2. The Husband covenants, warrants and represents to the Wife that he has not incurred or contracted any debt or obligation for which the Wife or her estate is or may become liable. The Husband shall not incur or cause to be incurred any debt or liability whatsoever whether for necessaries or otherwise upon the credit of the Wife for which the Wife or her estate may be or may become liable and the Husband shall and will hold the Wife free and harmless from and indemnify her against any and all debts, liabilities and obligations of any and every kind that may be incurred hereafter or contracted by him hereafter for his benefit, including any loss, expenses and damages, including reasonable attorney's fees which may be incurred by the Wife or her estate



14

in connection with the breach by the Husband of his obligations under this paragraph. The Wife or her estate promises to notify the Husband if any claim is made against her or her estate as a result of any debt, charge or liability incurred by the Husband and shall afford the Husband an opportunity to defend against any such claims at his sole cost and expense.

3.   The parties hereby acknowledge the existence of a mortgage on the Greenhedges property taken by Husband, currently in the amount of approximately $145,900 to Ponce De Leon Bank, loan : _Redacted_   The Wife hereby agrees to pay the current monthly mortgage payments of approximately $1800.00 and to keep this mortgage current.

4.   Should Husband file for a legal divorce from the Wife, Wife hereby agrees to pay off the outstanding loan against the Husband's account, currently outstanding in the amount *NAC* of _9000_____, said loan made by Diversified Investment Advisors, 4 Manhattanville Road, Purchase, New York, Loan # _Redacted_, to Husband.

5.      Husband hereby acknowledges that from the date of the execution of this Agreement he, and he alone, shall be responsible for the payment of any and all unreimbursed medical expenses incurred by the Husband.


ARTICLE IX

MUTUAL RELEASES AND DISCHARGE OF CLAIMS TO ESTATES

1. Except as in this Agreement otherwise expressly provided and except to enforce the obligations of the other as set forth in this Agreement, each of the parties hereto waives, renounces, grants, remises and releases to the other, forever, for all purposes whatsoever, all rights in the property of the other including dower, curtesy, community property, equitable distribution or a distributive award of the marital property, and all rights and interest which he or she may now have or may hereafter acquire in the real or personal property or estate of the other wheresoever situated and whether acquired before or subsequent to the marriage of the parties or before or subsequent to the date of this Agreement, by reason of his or her inheritance or descent or by virtue of any decedent's or estate law or any statute or custom, or arising out of the marital



15

relationship, or for any other reason whatsoever, and each party hereby expressly waives and releases any right of election under the Estates, Powers and Trusts Law of the State of New York ("EPTL") or any successor statute whereto, or any other law of any and all states, territories and jurisdictions, to take against the Last Will and Testament or codicils thereto of the other whatsoever, whether heretofore or hereafter executed, including but not limited to, any right to elect to take, as against the same, as provided in EPTL 55-1.3 to which he or she would otherwise be entitled, and each party hereby renounces and waives any right to administration of the estate of the other party, and further waives any right to be or become the legal representative of the other's estate.

2. Except as herein to the contrary expressly provided, the parties shall and do hereby mutually revise, release and forever discharge each other from any and all actions, suits, debts, claims, demands and obligations whatsoever, both in law and in equity, which either of them ever had, now has, or may hereafter have against the other upon or by any matter, cause or thing up to the date of the execution of this Agreement, except for any grounds for divorce by either party against the other, it being the intention of the parties that henceforth there shall be, as between them, only such rights and obligations as to all other such matters as are specifically provided in this Agreement, except for grounds for divorce.

3. Except as in this Agreement expressly otherwise provided, each of the parties shall have the right to dispose of his or her property, by Last Will and Testament, or otherwise as if he or she were unmarried and in case either party shall die intestate, the estate of such party, whether real, personal or mixed, shall belong to the person or persons who would have been entitled thereto if the surviving party had predeceased the other party and had died unmarried.

4. Each party hereby expressly revokes any provision for the benefit of the other contained in any Last Will and Testament previously executed by him or her. However, nothing in this agreement shall prevent either party from devising any property to the other so long as the provision of the Last Will and Testament of that party expressly states that such a devise is made notwithstanding this Agreement, and said Will mentions this Agreement in particular.

16

## ARTICLE X
## MEDICAL INSURANCE AND MEDICAL EXPENSES

1. The Husband agrees to maintain and pay for medical insurance for the Wife, provided Wife continues to provide Husband with the funds and money necessary to pay for said insurance, provided medical insurance for the Wife is available to Husband under whatevber insurance plan he is currently covered under.

2. The Husband shall, from time to time, furnish to Wife whatever current identification cards, if any, may be issued by the various insurance companies involved to enable her to exhibit the same in connection with obtaining any medical, surgical or hospital service for herself.

## ARTICLE XI
## INCOME TAXES

1. In the event of a claim or deficiency arising from any joint federal, state or city tax returns filed by the parties or arising from the failure of the parties to file any federal, state or city tax return required to be filed for calendar years 1985 through and including 1998, including any claim or deficiency arising from any such return or the failure to file any such return relating to the income, deductions, exemptions, exclusions and credits, or otherwise, of either plaintiff or defendant or both of them, the Parties agree, based upon liability assigned by the Internal Revenue Service or other tax authority, to pay any claim or deficiency relating to such Parties' income, deductions, exemptions, exclusions, credits or other tax attributes of any nature, including those already assessed by the respective tax authorities.  To date the Parties acknowledge that they have not been notified of any deficiency assessment, audit, lien, levy or inquiry by any federal, state or local tax authority.

## ARTICLE XII

17

## DEFAULT

1. If either party shall default in the performance of any of the provisions of this Agreement, and if the other party shall prevail in legal proceedings to enforce the performance of such provisions by the defaulting party, then the defaulting party shall pay to the other party the necessary and reasonable costs, damages and expenses incurred by the other party (including reasonable attorneys' fees) in connection with such proceedings. For purposes of this Article, the substantial performance by the defaulting party of the obligation after notification of a default and institution of litigation shall be deemed to be the equivalent of the non-defaulting party's having prevailed in a legal proceeding for purposes of the non-defaulting party recovering reasonable and necessary costs and expenses.

2. The provisions of this Article shall be in addition, and without prejudice, to any other rights and remedies to which the aggrieved party may be entitled.

## ARTICLE XIII

## DISCLOSURE AND LEGAL REPRESENTATION

1. The parties declare that each has had independent legal advice by counsel of his or her own selection in this action and in connection with the negotiation and execution of this Stipulation, the Husband having been represented by

_____, New York 11530, and the Wife having been represented by BUNTING & HILTZIK, 1400 Old Country Road, Westbury, New York 11590.

2. This Agreement is entire and complete and embodies all understandings and agreements between the parties; and no representations, agreements, promises, undertakings or warranties of any kind or nature have been made to the other to induce the making of this Agreement, except as are expressly set forth in this Agreement, and neither of the parties shall assert that there is any other agreement, oral or written, existing between them. The parties acknowledge that each has

18

had a full and complete opportunity with respect to obtaining any and all financial information of the other and that affidavits of net worth were exchanged, and photocopies of various financial documents were had, and each is satisfied that the prior distributions of property, and the provisions of this Agreement represent and set forth a fair and equitable distribution of each of their property or from the marital relationship or to which either may have any right, title or interest whether under the law or otherwise, and further acknowledge and agree that the said division of property provided for herein represents a fair division of said property rights. This Agreement is made, *inter alia*, in light of the foregoing. Each party expressly denies relying on any alleged statement or representation of the other, or upon any belief held as to the other not expressly set forth herein, as a condition or as consideration for entering into this Agreement. The parties acknowledge that they are entering into this Agreement freely and voluntarily; that they have ascertained and weighed, to their complete satisfaction, all of the facts and circumstances likely to influence their judgment including the right to further financial disclosure; that they have sought and obtained legal advice independently of each other; and that they have been duly apprised of their respective legal rights and each has had the provisions hereof fully explained to him or her, and specifically his or her rights under the existing laws of the State of New York concerning marital property, separate property, and other financial matters; that all the provisions hereof, as well as all questions pertaining thereto, have been fully and satisfactorily explained to them; that they were given due consideration to such provisions and questions; and that they clearly understand and assent to all the provisions hereof, and that this Agreement and prior distributions constitute a fair and adequate settlement of all claims between them as set forth herein.

## ARTICLE XIV

### MODIFICATION AND WAIVER

Neither this Agreement nor any provisions hereof (including, without limitation, this Article) may be amended, waived or modified or deemed amended, waived or modified except by

028/034

19

an agreement in writing, identifying each particular provision amended, waived or modified and duly subscribed and acknowledged by both parties with the same formality as this Agreement. No oral representation shall constitute an amendment, waiver or modification even if substantially and detrimentally relied upon. Any waiver by either party of any provision of this Agreement or any right or option hereunder shall not prevent or stop such party from thereafter enforcing such provision, right or option, and the failure of either party to insist in any one or more instances upon the strict performance of any of the terms or provisions of this Agreement by the other party shall not be construed as a waiver or relinquishment for the future of any such term or provision, but the same shall continue in full force and effect.

## ARTICLE XV

### RECONCILIATION

1. This Agreement shall not be invalidated or otherwise affected by a temporary reconciliation between the parties or a resumption of marital relations between them unless said reconciliation or said resumption be accompanied by a written statement signed by the parties with respect to said reconciliation and resumption and, in addition, setting forth that they are canceling this Agreement.



## ARTICLE XVI

### NOTICES

1. Notices required by this Agreement to be sent to the Wife shall be sufficient if sent by the Husband or his representative, by registered or certified mail plus one copy by regular mail to the Wife at _____ or to such other address of which the Wife, by registered or certified mail notice, shall have advised the Husband for the sending of such notice.

2. Notices required by this Agreement to be sent to the Husband by the Wife shall be sufficient if sent by the Wife or her representative by registered or certified mail plus one copy by regular mail to the Husband at _____ or to such other address of

20

which the Husband, by registered or certified mail notice, shall have advised the Wife for the sending of such notices.

3. Notwithstanding the foregoing, a written acknowledgment of the receipt of a notice, if signed by the party to whom the notice is addressed, shall be sufficient and such notice need not also be sent by registered or certified mail.

## ARTICLE XVII

### POSSIBLE INVALIDITY

Except as otherwise expressly provided in this Agreement, in case any provision of this Agreement should be held to be contrary to or invalid under the law of any country, state or other jurisdiction, such illegality or invalidity shall not affect in any way any other provision hereof, all of which shall continue, nevertheless, in full force and effect; and any provision which is held to be illegal or invalid in any country, state or other jurisdiction shall, nevertheless, remain in full force and effect in any country, state or other jurisdiction in which such provision is legal and valid. The parties do not intend to imply hereby that either of them or either of their counsel believes any provision of this Agreement to be illegal or invalid.

## ARTICLE XVIII

### ENTIRE UNDERSTANDING

This Agreement contains the entire agreement of the parties, except as to the issue of the entitlement of either party to a divorce. The parties acknowledge that there are no representations, warranties, promises, promises as to conduct, or undertakings not herein set forth.

## ARTICLE XIX

### LEGAL INTERPRETATION

21

This Agreement and all of the rights and obligations of the parties hereunder shall be construed according to the laws of the State of New York as an agreement made and to be performed within said State and without regard to the choice of law rules thereof.

## ARTICLE XX

## INDEPENDENT COVENANTS

Except as otherwise provided herein, each of the respective rights and obligations of the parties hereunder shall be deemed independent and may be enforced independently, irrespective of any of the other rights and obligations set forth herein.

## ARTICLE XXI

## VOLUNTARY PAYMENTS

Any payments voluntarily made by the Wife to the Husband or the Husband to the Wife, at any time, for her or his maintenance, respectively, in excess of the sums hereinabove specified, shall not alter the Wife's or Husband's legal obligations hereunder nor create any precedent for the future. Such excess payments shall not be construed as proof or indication of the Wife's or Husband's ability to make increased payments, nor of the Wife's or Husband's need hereof, and, accordingly, said payments shall not be used in an action or proceeding for evidentiary purposes or otherwise.



## ARTICLE XXII

## VOLUNTARY EXECUTION AND FULL DISCLOSURE

Both the legal and practical effect of this Agreement in each and every respect and the financial status of the parties have been fully explained to both parties and they both acknowledge that it is a fair agreement and is not the result of any fraud, duress or undue influence exercised by either party upon the other or any other person or persons upon either.

## ARTICLE XXIII

031/034

22

## FURTHER INSTRUMENTS

The Wife and Husband shall, whenever requested by the other party, or his or her legal representatives, make, execute, acknowledge and deliver any instruments which are necessary or desirable to effectuate and give full force to the distributions, payments, divisions, covenants, agreements, understandings, waivers, releases, discharges and other provisions contained in this Agreement, without charge therefor, and each hereby directs his or her executors, administrators or other legal representative to make, execute, acknowledge and deliver any such required documents, without charge therefor. Each party, in the event of the death of the other party, whether such party dies testate or intestate, will, whenever requested by the executors, administrators or other legal representatives of the other party, execute, acknowledge or deliver any instruments which, in the opinion of said executors, administrators and other legal representatives, are necessary to effectuate the waiver of his or her right to election against the Last Will and Testament of the other, curtesy, and other rights to take as distributee, heir, or next-of-kin and the like herein referred to, without charge therefor.

## ARTICLE XXIV

## BINDING EFFECT

This Agreement and all the obligations and covenants hereunder shall bind the parties hereto, their heirs, distributees, next-of-kin, executors, administrators, legal representatives and assigns and shall inure to the benefit of their respective heirs, distributees, next-of-kin, executors, administrators, legal representatives and assigns.



## ARTICLE XXV

## CHANGE OF ADDRESS

The parties hereby agree that each will notify the other by registered or certified mail, return receipt requested, of any change of address, and/or telephone number, within five (5) days of the date of such change.

23

## ARTICLE XXVI

### PARTIES ACKNOWLEDGMENT

The parties have entered into this Agreement and arrived at the equitable distribution of their assets taking into account the potential for the generation of income on an annual basis realizable from the assets transferred to him/her and his/her employment potential and have fully considered all anticipated amounts which may be necessary for the Wife's and Husband's support, and arising by virtue of inflationary trends and increases in cost of living. The parties acknowledge that this Agreement was entered into after due and considered deliberation, that each has considered their present and future needs, their present and future earning potential, their present assets, present income, and any potential increases in income by either the Wife or Husband during their business or professional life received through employment or otherwise and each party specifically represents that he or she will not seek any alimony or maintenance from the other at a future date, except as may herein be provided. Accordingly, except as provided in this Agreement, the Wife and Husband hereby expressly waive any right he or she may have against the other to receive any support or allowance past, present and future and each party acknowledges that such support or allowance is not necessary in order to maintain his or her present standard of living.

## ARTICLE XXVII

### MISCELLANEOUS

Whenever the context of this Agreement shall so require, or if it shall be convenient for the understanding of this Agreement, in whole or in part, words, terms and phrases in the singular shall also include the plural and those in the plural shall also include the singular. Similarly, words, terms and phrases which shall be in the masculine gender shall, if the context requires, include the feminine and the feminine shall include the masculine.

## ARTICLE XXVIII

# ADDENDA AND CORRECTIONS TO SEPARATION AGREEMENT

PAGE 3..ARTICLE 1..PAGE 4..HUSBAND MAY MAINTAIN FULL RESIDENCE AT GREENHEDGES AS LONG AS HE SHALL LIVE, THE EXCEPTION BEING IF HE IS NOT PHYSICALLY AND OR MENTALLY ABLE TO REMAIN ON THAT PROPERTY.

PAGE 7..ARTICLE 5..SEC.2........HUSBAND MAY AGREE TO....

PAGE 8..SEC.4..LINE 7..WITHOUT CO-SIGNATURE OF THE OTHER PARTY

PAGE 8..SEC.5.. LINE 4..STRIKE OUT BRACKETED AREA.
          LINE 5..AGREES TO CONTINUE TO DEPOSIT..

PAGE 9..SEC 5..LINE 1..AS WELL AS THE $865 TEACHER'S PENSION.....
          LINE 2..STRIKE OUT BRACKETED AREA.

PAGE 9..SEC.6..LINE 4..APPROXIMATELY $50,000

PAGE 9..SECTION 8. THIS ACCOUNT IS A SAVINGS ACCOUNT. ANY BALANCE REMAINING AFTER THE DEATH OF HOWARD, SHALL REVERT TO GLORIA GREEN, HC'S SISTER, OR SHELDON CHASSEN, HC'S BROTHER.

PAGE 12..SEC.17..ANY EXPENSES RELATED TO ⟨Redacted⟩ SHALL BE PAYED BY THE WIFE SINCE SHE IS DEEMED TO BE SOLE AND EXCLUSIVE OWNER.

PAGE 12..ARTICLE 7..(BLANK SPACES)DODY BARUCH, SECONDARY TRUSTEE STUART CHASSEN FOR THE BENEFIT OF HOWARD CHASSEN

PAGE 14..ARTICLE.7..SEC 4.. IN THE AMOUNT OF $9,000

PAGE 17..ARTICLE 1..HUSBAND REPRESENTED BY PATRICIA O'DONNELL, PANTIGO RD., EAST HAMPTON.

DECEMBER 27, 1998



24

## ARTICLE HEADINGS

The headings enumerated at the beginning of each Article of this Agreement and the titles of the same, are for reference purposes only and shall not, in any manner, constitute terms or conditions of this Agreement, nor shall they be applicable to any interpretation of the intent or meaning of any part of this Agreement.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals the day and year first above written.

_____
DODY BARUCH

_____
HOWARD CHASSEN

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF SUFFOLK    )

On this 28th day of December, 1998, before me personally appeared DODY BARUCH, to me known and known to me to be the person mentioned and described in and who executed the foregoing instrument, and she duly acknowledged to me that she executed the same.

_____
Notary Public

KATHLEEN G. BECKMANN
Notary Public, State of New York
No. 4893145, Suffolk County
Commission Expires June 29, 1999.

STATE OF NEW YORK    )
                     )
                          ss.:





ANTHONY S. DANNA, ESQ
MEMBER: NY, NJ, & FL BARS

SARA R. GONZALEZ, ESQ
MEMBER: NY BAR

WWW.DANNALAW.COM
INQUIRY@DANNALAW.COM

March 10, 2009

**VIA FACSIMILE: 914.697.3520 & 1ST CLASS MAIL**

James P. Larkin, Esq.
Diversified Investment Advisors, Inc.
4 Manhattanville Road
Purchase, NY 10577

**Re:    Annuity Account #** ~~Redacted~~ **– Howard Chassen**
**Social Security #** ~~Redacted~~

Dear Mr. Larkin:

In furtherance to our correspondences of November 2008, please be advised that Mark Chassen has been appointed as personal representative of the Estate of Howard Chassen.  A copy of the *Order Appointing Personal Representative* is attached herewith for your reference.

Please advise as to the necessary requirements in order to release the funds to the Estate.

Thank you in advance.

Very truly yours,
DANNA & ASSOCIATES, PC

By:   _____
        Anthony S. Danna, Esq.

attachment
ASD/bas
Cc:    Mark Chassen

---

1145 FOREST AVENUE
STATEN ISLAND, NY 10310
TEL.: 718.273.0300
FAX: 718.448.6820

275 WATER STREET
NEW YORK, NY 10038
TEL.: 212.523.0007
FAX: 718.448.6820

1040 AMBOY AVENUE
EDISON, NJ 08837
TEL.: 732.521.4000
FAX: 718.448.6820

7431 W. ATLANTIC AVE., #49
DELRAY BEACH, FL 33448
TEL.: 561.498.5833
FAX: 718.448.6820

*G:\Data Files\TMclient\Chassen, Mark\08-4527\4COT\Diversified-0003.DOC*

IN THE CIRCUIT COURT FOR **BROWARD** COUNTY, FLORIDA

| IN RE:  ESTATE OF | PROBATE DIVISION |
| **HOWARD CHASSEN** | 0 9 0 0 0 4 0 1 |
| | File Number _____ |
| Deceased | Division _____ #61 |

## ORDER APPOINTING PERSONAL REPRESENTATIVE
(intestate single)

On the petition of MARK CHASSEN for administration of the estate of HOWARD CHASSEN, the court finding that the decedent died on MARCH 31, 2008 and that MARK CHASSEN is entitled to appointment as personal representative by reason of his being the only one of the two children of the decedent who resides in the United States, and is qualified to be personal representative, it is

ADJUDGED that MARK CHASSEN is appointed personal representative of the estate of the decedent, and that upon taking the prescribed oath, filing designation of resident agent and acceptance, and entering into bond in the sum of _____ 35,000 _____, letters of administration shall be issued.

Ordered on ___January 29, 2009.___

_____
Circuit Judge

**A TRUE COPY**
HOWARD C. FORMAN

# ROBERT C. HILTZIK
**Attorney at Law**
400 South Oyster Bay Road
Suite 400
Hicksville, New York 11801
(516) 308-4674
Fax (516) 937-1456



November 17, 2009

JAMES P. LARKIN, ESQ.
DIVERSIFIED INVESTMENT ADVISORS, INC.
4 Manhattanville Road
Purchase, New York 10577

By fax: (914) 697-3520 and Certified Mail

Re: Howard Chassen Account (Deceased), Acct #FA *Redacted*

Dear Mr. Larkin:

As we discussed today, I am the attorney for DODY BARUCH, the named beneficiary of Mr. Chassen's account referenced above. Please accept this letter as a **Demand** on behalf of Ms. Baruch to distribute the proceeds and/or funds contained in said account to Ms. Baruch, pursuant to the terms of Mr. Chassen's account.

Please contact me if you have any questions or require any further information.

Sincerely,

ROBERT HILTZIK